# EXHIBIT A

## State Court Pleadings

Civil Action No. 24-M-32850

Date Filed August 2, 2024

**Magistrate Court** ☑
**Superior Court** ☐
**State Court** ☐
**Georgia, Gwinnett County**

BRANDON RAWLS

Plaintiff

VS.

Trans Union, LLC

Defendant

Garnishee

FILED IN OFFICE CLERK MAGISTRATE COURT GWINNETT COUNTY, GA
24 AUG -8 PM 1:52
TIANA P. GARNER, CLERK

Attorney's Address
BRANDON RAWLS
PO Box 675622
Marietta, Georgia (30006)

Name and Address of party to be served.
Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

## Sheriff's Entry Of Service

**Personal** ☐ I have this day served the defendant ______ personally with a copy of the within action and summons.

**Notorious** ☐ I have this day served the defendant ______ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of ______ described as follows age, about ______ years; weight, about ______ pounds; height, about ______ feet and ______ inches; domiciled at the residence of defendant.

**Corporation** ☑ Served the defendant TRANS UNION, LLC a corporation by leaving a copy of the within action and summons with Alisha Smith in charge of the office and place of doing business of said Corporation in this County.

RECEIVED 2024 AUG -5 PM 1:10 GWINNETT CO. G.C.S.D.

**Tack & Mail** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**Non Est** ☐ Diligent search made and defendant ______ not to be found in the jurisdiction of this Court.

This 5 day of August, 2024.

B. Woods 5774
**Deputy**

Sheriff Docket ______ Page ______

**Gwinnett County, Georgia**

WHITE: Clerk CANARY: Plaintiff / Attorney PINK: Defendant

SC-2 Rev.3.13

# Gwinnett County Sheriff's Office

## Cover Sheet

**Sheriff #:** 24024815

**Person Served:** TRANS UNION LLC
2 SUN COURT SUITE 400
Peachtree Corners GA 30092
PHONE:

**Process Information:**

Date Received: 08/03/2024

Assigned Zone: 2 Sun Court

Court Case #: 24-M-32850

Expiration Date:

Hearing Date:

Paper Types: STATEMENT OF CLAIM & NOTICE AND SUMMONS

Notes/Alerts:

**Notes:**

110 ~~100~~ C

**IN THE MAGISTRATE COURT OF GWINNETT COUNTY, STATE OF GEORGIA**

BRANDON RAWLS
PO Box 675622
Marietta, georgia (30006)
Plaintiff(s)

vs.

TRANS UNION, LLC
555 West Adams Street
Chicago, IL 60661-3719
Defendant(s)

(800) 916-8800
Telephone (Daytime number if known, otherwise, evening number)

**Clerk, Gwinnett Magistrate Court, P.O. Box 246**

**Lawrenceville, GA 30046-0246 (770.822.8100, Ext. Civil Division)**

Civil Action No. 24-M-32850

INFO & FORMS ON INTERNET
www.gwinnettcourts.com
E-mail: mag@gwinnettcounty.com

# STATEMENT OF CLAIM

2024 AUG 2 PM 4:23

TIANA P. GARNER, CLERK

[ ] Suit on Note [ ] Suit on Account [√] Other Fair Credit Reporting Act

1. The Court has jurisdiction over the defendant(s) [X] the Defendant(s) is a resident of Gwinnett County; [ ] Other (please specify)

2. Plaintiff(s) claims the Defendant(s) is/are indebted to the Plaintiff as follows: (You must include a brief statement giving reasonable notice of the basis for each claim contained in the Statement of Claim)

See Attached

3. That said claim is in the amount of: $ TBD principal, $ ____ interest, plus $ 110.00 costs to date, and all future costs of this suit.

State of Georgia, Gwinnett County:

BRANDON RAWLS being duly sworn on oath, says the foregoing is a just and true statement of the amount owing by defendant to plaintiff, exclusive of all set-offs and just grounds of defense.

Sworn and subscribed before me this

2 day of August 20 24

A Vance
Notary Public/Attesting Official

Plaintiff Brandon Rawls
Plaintiff or Agent

Authorized Representative
(If Agent -- Title or Capacity)

Day Time Phone Number (470) 641-5542

I request a civil trial [ ] during normal business hours **- OR -** [ ] 6:30 PM, evening trials. **ALL CONFLICTS ARE SCHEDULED FOR 6:30 PM.**

**NOTICE AND SUMMONS**

**TO: All Defendant(s)**

You are hereby notified that the above named Plaintiff(s) has/have made a claim and is requesting judgment against you in the sum shown by the foregoing statement. **YOU ARE REQUIRED TO FILE or PRESENT AN ANSWER (answer forms can be obtained from the above listed web-site or clerk's office) TO THIS CLAIM WITHIN 30 DAYS AFTER SERVICE OF THIS CLAIM UPON YOU. IF YOU DO NOT ANSWER, *JUDGMENT BY DEFAULT* WILL BE ENTERED AGAINST YOU. YOUR ANSWER MAY BE FILED IN WRITING OR MAY BE GIVEN ORALLY TO THE JUDGE.** If you choose to file your answer orally, it MUST BE IN OPEN COURT IN PERSON and within the 30 day period. **NO TELEPHONE ANSWERS ARE PERMITTED**. The court will hold a hearing on this claim at the Gwinnett Justice & Administration Center, 75 Langley Dr., Lawrenceville, GA 30046, at a time to be scheduled after your answer is filed. You may come to court with or without an attorney. If you have witnesses, books, receipts, or other writings bearing on this claim, you should bring them to court at the time of your hearing. If you want witnesses or documents subpoenaed, see a staff person in the Clerk's office for assistance. If you have a claim against the Plaintiff, you should notify the court by immediately filing a written answer and counterclaim. If you admit to the Plaintiff's claim but need additional time to pay, you must come to the hearing in person and tell the court your financial circumstances. Your answer must be RECEIVED by the clerk within 30 days of the date of service. If you are uncertain whether your answer will timely arrive by mail, file your answer in person at the clerk's office during normal business hours.

Filed this 2 day of August 20 24

A Vance
Magistrate or Deputy Clerk of Court

**See Instructions on Reverse Side of This of this Document**

**IN THE MAGISTRATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| BRANDON RAWLS<br>Plaintiff<br>v.<br>Trans Union, LLC<br>Defendant | Civil Action File No. 24-M-32850 |

**INTRODUCTION**

1. This action is brought by BRANDON RAWLS ("Plaintiff") to address the conduct by Defendant TRANS UNION, LLC aka TRANS UNION LLC dba TRANSUNION ("Defendant" or "TransUnion"), including its deliberate and negligent disregard for their obligations under the Fair Credit Reporting Act, 15U.S.C. § 1681, et seq., (the "FCRA"), i.e., 15 U.S.C.§§ 1681g(a)(l), 1681n, and 1681o.

2. This lawsuit is based on TransUnion's persistent failure to provide Plaintiff with his consumer file upon his request, which is his statutory right under 15 U.S.C. § 1681g.

3. TransUnion's persistent failure to provide Plaintiff with his consumer file upon his request constitutes willful noncompliance of its statutory duties under the FCRA.

4. TransUnion's persistent failure to provide Plaintiff with his consumer file upon his request constitutes, at minimum, negligent noncompliance of its statutory duties under the FCRA.

5. TransUnion's herein-alleged conduct has resulted in significant damages to Plaintiff.

6. TransUnion's herein-alleged conduct has compromised Plaintiffs legal rights, well- being and his ability to review his file to address its inaccuracies and incompleteness.

7. This case further arises from TransUnion's broad duty to exercise reasonable care in maintaining, managing, and disseminating Plaintiff's consumer file information.

8. TransUnion has breached its duty by failing to comply with specific FCRA requirements, thereby causing substantial harm to Plaintiff.

9. Through this lawsuit, Plaintiff seeks rightful compensation for the damages incurred because of TransUnion's herein-alleged conduct, including TransUnion inaction.

10. This case highlights the critical importance of diligently upholding the provisions of the FCRA.

11. This action emphasizes the urgent need for legal accountability upon consumer reporting agencies ("CRAs"), such as TransUnion, when the rights of consumers are disregarded.

12. This action seeks to ensure that organizations, namely CRAs, such as TransUnion, are held accounting for their failure to abide by their responsibilities pursuant to the FCRA.

**JURISDICTION AND VENUE**

13. This court has jurisdiction under 15 U.S.C. §1681p.

14. This court has jurisdiction under 15 U.S.C. §1681p to enforce any liability by TransUnion to Plaintiff under 15 U.S.C. §168ln.

15. This court has jurisdiction under 15 U.S.C. §168lp to enforce any liability by TransUnion to Plaintiff under 15 U.S.C. §1681o.

**PARTIES**

***Plaintiff* BRANDON RAWLS**

16. Plaintiff BRANDON RAWLS (hereinafter "BR") is a natural person.

17. Plaintiff is a "consumer" within the meaning of the FCRA, as per 15 U.S.C. § 1681a(c).

***Defendant* TRANS UNION, LLC *aka* TRANS UNION LLC *dba* TRANSUNION**

18. Upon information and belief, Defendant TRANS UNION, LLC aka TRANS UNION LLC dba TRANSUNION ("TransUnion") is a foreign limited liability company.

19. Upon information and belief, TransUnion is an American consumer reporting agency.

20. Upon information and belief, TransUnion collects and aggregates information on over one billion individual consumers in over thirty countries including "200 million files profiling nearly every credit-active consumer in the United States".

21. Upon information and belief, TransUnion's customers include over 65,000 businesses.

22. Upon information and belief, based in Chicago, Illinois, TransUnion's 2014 revenue was US$1.3 billion.

23. Upon information and belief, TransUnion is the smallest of the three largest credit agencies, along with 'Experian and Equifax (known as the "Big Three").

24. Upon information and belief, TransUnion also markets consumer reports (also known as "credit reports") and other credit and fraud-protection products directly to consumers.

25. Upon information and belief, like all credit reporting agencies, TransUnion is required by U.S. law to provide consumers with one free credit report every year.

26. Upon information and belief, additionally, a growing segment of TransUnion's business is its business offerings that use advanced big data, particularly its deep AI-TLOxp product.

*TransUnion's History*

27. Upon information and belief, TransUnion was originally formed in 1968 as a holding company for Union Tank Car Company, making TransUnion a descendant of Standard Oil through Union Tank Car Company.

28. Upon information and belief, the following year, TransUnion acquired the Credit Bureau of Cook County, which possessed and maintained 3.6 million credit accounts.

29. Upon information and belief, in 1981, a Chicago-based holding company. The Marmon Group acquired TransUnion for approximately $688 million.

30. Upon information and belief, in 2010, Goldman Sachs Capital Partners and Advent International acquired TransUnion from Madison Dearborn Partners.

31. Upon information and belief, in 2014, TransUnion acquired Hank Asher's data company TLO.

32. Upon information and belief, on June 25, 2015, TransUnion became a publicly traded company for the first time, trading under the symbol TRU.

33. Upon information and belief, TransUnion eventually began to offer products and services for both businesses and consumers.

34. Upon information and belief, for businesses, TransUnion updated its traditional credit score offering to include trended data that helps predict consumer repayment and debt behavior. Upon information and belief, that product, referred to as Credit Vision, launched in October 2013.

35. Upon information and belief, TransUnion's SmartMove™ service facilitates credit and background checks for landlords. Upon information and belief, the service also provides credit and background checks for partner companies, such as RentSpree.

36. Upon information and belief, in September 2013, the company acquired eScan Data Systems of Austin, Texas, to provide post-service eligibility determination support to hospitals and healthcare systems. Upon information and belief, the technology was integrated into TransUnion's ClearIQ platform, which tracks patient's demographic and insurance related information to support benefit verification.

37. Upon information and belief, in November 2013, TransUnion acquired TLO LLC, a company that leverages data in support of its investigative and risk management tools. Upon information and belief, its TLOxp technology aggregates data sets and uses a proprietary algorithm to uncover relationships between data. Upon information and belief, TLOxp also allows licensed investigators and law enforcement professionals to access personally identifiable information from credit header data.

38. Upon information and belief, in 2014, a TransUnion analysis found that reporting rental payment information to credit bureaus can positively affect credit scores. Upon information and belief, as a result, TransUnion initiated a service called Resident Credit, making it easy for property owners to report data about their tenants on a monthly basis. Upon information and belief, these reports include the amount each tenant pays, the timeliness of their last payment, and any remaining balance the tenant currently owes. Upon information and belief, as a result, some companies have started reporting rent payment information to TransUnion.

39. Upon information and belief, in 2015, TransUnion acquired Trustev, a digital verification company specializing in online fraud for $21 million, minus debts.

40. Upon information and belief, in 2017, TransUnion acquired FactorTrust, a consumer reporting agency specializing in alternative credit data.

41. Upon information and belief, in mid-April 2018, TransUnion announced it intended to buy UK-based CallCredit Information Group for $1.4 billion, subject to regulatory approval.

42. Upon information and belief, in December 2021, TransUnion completed the acquisitions of Neustar, initially announced in September 2021 for $3.1 billion, and Sontiq, initially announced in October 2021 for $638 million.

43. Upon information and belief, in February 2023, TransUnion announced it was rebranding its "thousands of existing B2B products into seven business lines." These include: TruAudience, TruValidate, TruContact (all based on former offerings from Neustar), TruVision, TruIQ, TruEmpower, and TruLookup.

*TransUnion's Legal and Regulatory Issues*

44. Upon information and belief, in 2003, Judy Thomas of Klamath Falls, Oregon, was awarded $5.3 million in a successful lawsuit against TransUnion. Upon information and belief, the award was made on the grounds that it took her six years to get TransUnion to remove incorrect information in her consumer report a.k.a. credit report.

45. Upon information and belief, in 2006, after spending two years trying to correct erroneous credit information that resulted from being a victim of identity theft, a fraud victim named Sloan filed suit against all three of the US's largest credit agencies. Upon information and belief, TransUnion and Experian settled out of court for an undisclosed amount. Upon information and belief, in Sloan v. Equifax, a jury awarded Sloan $351,000. Upon information and belief, "She wrote letters. She called them. They saw the problem. They just didn't fix it," said her attorney, A. Hugo Blankingship III.

46. Upon information and belief, TransUnion has also been criticized for concealing charges.

47. Upon information and belief, many TransUnion users complained of not being aware of a $17.95/month charge for holding a TransUnion account.

48. Upon information and belief, in March 2015, following a settlement with the New York Attorney-General, TransUnion, along with other credit reporting companies, Experian and Equifax, agreed to help consumers with errors and red flags on credit reports. Upon information and belief, under the new settlement, credit-reporting firms are required to use trained employees to respond when a consumer flags a mistake on their file. Upon information and belief, these employees are responsible for communicating with the lender and resolving the dispute.

49. Upon information and belief, in January 2017, TransUnion was fined $5.5 million and ordered to pay $17.6 million in restitution, along with Equifax, by the Consumer Financial Protection Bureau (the "CFPB").

50. Upon information and belief, the CFPB fined TransUnion and Equifax "for deceiving consumers about the usefulness and actual cost of credit scores they sold to consumers."

51. Upon information and belief, the CFPB also said TransUnion and Equifax "lured consumers into costly recurring payments for credit-related products with false promises."

52. Upon information and belief, consumer reporting agencies had the most complaints of all companies filed with the CFPB by consumers in 2018, with 34% of all complaints directed at TransUnion, Equifax, and Experian that year.

53. Upon information and belief, in June 2017, a California jury ruled against TransUnion with a $60 million verdict in the largest FCRA verdict in history. Upon information and belief, the San Francisco federal court jury awarded $60

million in damages to consumers who were falsely reported on a government list of terrorists and other security threats. Upon information and belief, the plaintiffs' team of attorneys at Francis & Mailman, P.C. partnered with another California-based firm in the class action. Upon information and belief, following up on this, in April 2022, the CFPB said TransUnion is "incapable of operating its businesses lawfully."

*TransUnion's Security Issues*

54. Upon information and belief, on October 13, 2017, the website for TransUnion's Central American division was reported to have been redirecting visitors to websites that attempted drive-by downloads of malware disguised as Adobe Flash updates.

55. Upon information and belief, the attack had been performed by hijacking third-party analytics JavaScript from Digital River brand FireClick.

56. Upon information and belief, on March 17, 2022, TransUnion South Africa disclosed that hackers breached one of their servers and allegedly stole data of 54 million customers, demanding a ransom to not release it, the group N4ughtysecTU claims responsibility.

**LIMITATION OF ACTION**

57. An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of-

(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation that is the basis for such liability occurs.

**FACTS OF THE COMPLAINT**

58. Plaintiff re-alleges and reasserts all the allegations contained in paragraph 1 through 57.

59. On or about June 6, 2024, Plaintiff made his first written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested (hereinafter referred to as the "First TransUnion File Request").

60. Plaintiffs above-referenced file request to TransUnion alleged in paragraph #59 requested: 1) All information in my consumer file.

61. Contrary to Plaintiffs clear file request, TransUnion response, dated June 12, 2024, did not contain a copy of the "file" requested in Plaintiffs letter, but TransUnion provided a response stating, in part: "You recently contacted TransUnion regarding an inquiry. An inquiry is posted on your TransUnion credit report to notify you that a company has received your credit report from TransUnion.".

62. On or about June 27, 2024, Plaintiff made his second written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested (hereinafter referred to as the "Second TransUnion File Request").

63. Contrary to Plaintiffs clear file request, TransUnion response, dated July 5, 2024, did not contain a copy of the "file" requested in Plaintiffs letter, but TransUnion provided a response stating, in part: "Enclosed is the TransUnion Personal Credit Report. As a trusted leader in the consumer credit information industry, TransUnion takes the accuracy of your credit information very information very seriously. We are committed to providing the complete and reliable credit information that you need to participate in everyday transaction and purchases.".

64. Despite the above-alleged diligent efforts by Plaintiff, TransUnion responses, including disregarding its statutory requirement to provide Plaintiff with his complete consumer file.

65. TransUnion mishandling of Plaintiffs file requests reflect a broader operational practice of obfuscating the distinction between a consumer "file" and consumer disclosures, which they misidentify as a "credit report," and complete consumer file per 15 U.S.C. § 1681 g(a).

66. TransUnion herein-alleged actions and inactions constitute a willful and/or negligent disregard for § 1681g(a) of the FCRA, has denied Plaintiff access to his file, and has also potentially concealed information critical to Plaintiffs financial and personal reputation.

67. TransUnion's above-alleged undisclosed consumer file information concerning Plaintiff, which, in part, has been provided to third parties by TransUnion, remains inaccessible to Plaintiff, depriving him of the opportunity to verify the accuracy and completeness of said information or dispute its contents, pursuant to his rights under the FCRA.

68. Plaintiff, in accordance with FCRA requirements, meticulously specified the statutory basis for his file requests to TransUnion for his full and complete consumer file.

69. Plaintiffs herein-alleged file requests were not casual inquiries but were grounded in clear statutory rights afforded to Plaintiff under 15 U.S.C. § 1681 g(a) of the FCRA, intended to ensure consumers can access all information held by consumer reporting agencies ("CRAs") about them, including but not limited to creditworthiness, reputation, and personal characteristics, inter alia.

70. TransUnion, which is a "consumer reporting agency" as defined under the FCRA, bore the legal duty to exercise reasonable care in furnishing Plaintiff with his complete consumer file upon request, which is TransUnion's duty under 15 U.S.C. § 1681 g(a).

71. TransUnion failed to fulfill this duty to Plaintiff, despite Plaintiffs repeated, documented requests to TransUnion for his complete consumer file.

72. TransUnion herein alleged omission directly violates the FCRA's provisions, evidencing a willful disregard for legislative mandates designed to safeguard public welfare.

73. As a direct and proximate result of TransUnion's herein-alleged conduct, Plaintiff has incurred damages and injuries, including, but not limited to the following: 1) Failure to Provide Consumer File: Despite multiple formal requests, TransUnion failed to provide Plaintiff with a complete consumer file as per 15 U.S.C. § 1681 g. TransUnion's failure resulted in personal and financial damages to Plaintiff. 2) Financial Losses: Mailing Costs: Plaintiff incurred significant expenses related to mailing written file requests to TransUnion to obtain Plaintiffs consumer file. These costs and expenses include U.S.P.S. postage and certified mail fees, per mailing for multiple mailings to TransUnion. 3) Credit and Financial Opportunities: Plaintiffs inability to access and verify the accuracy of his consumer file potentially affected Plaintiffs consumer credit decisions, which may have resulted in less favorable loan terms, increased interest rates, or outright denials of credit, affecting Plaintiffs financial health. 4) Emotional Distress: Plaintiffs ongoing uncertainty about the accuracy of his TransUnion consumer file and the potential misuse of his personal information has caused Plaintiff considerable anxiety and emotional distress. Said emotional distress is compounded by the lack of resolution and transparency from TransUnion. Plaintiffs' frustration and helplessness from not being able to access Plaintiffs TransUnion consumer file to address potential inaccuracies has significantly impacted Plaintiffs daily life and well-being. 5) Loss of Personal Time via Efforts to Resolve Issues: Plaintiff has spent considerable time and energy attempting to obtain his file from TransUnion. Plaintiff's efforts include drafting and mailing requests to TransUnion, tracking mail deliveries of said requests to TransUnion, and engaging in communications with TransUnion pursuant to said file requests made to TransUnion.

74. Plaintiffs herein-alleged severe emotional distress manifests itself as anxiety, stress, and a compromised sense of financial security, directly attributable to TransUnion actions and/or inactions.

75. The severe emotional distress and harm suffered by Plaintiff and other physical manifestations thereof are the direct and foreseeable consequences of TransUnion's failure to comply with its statutory duties under the FCRA, namely 15 U.S.C. § 1681 g(a).

76. The above-alleged causal link between TransUnion's conduct alleged herein and Plaintiffs damages links TransUnion's role in precipitating the Plaintiffs injuries and damages.

77. Despite Plaintiffs explicit and repeated requests, TransUnion's responses systematically evaded the statutory obligations set forth in the FCRA, namely 15 U.S.C. § 1681 g(a).

78. TransUnion's above-alleged evasion was not an isolated incident, but is indicative of a broader pattern of behavior, whereby Defendant, through its operational practices and internal policies, obstructs consumers' access to their full consumer files.

79. TransUnions's herein-alleged practices are in direct violation of 15 U.S.C. § 1681g.

80. Further, TransUnions's herein-alleged practices also undermine the transparency and accountability principles purposed in the FCRA.

81. TransUnion's above-alleged pattern of behavior not only challenges the integrity of its compliance with the FCRA, but also raises serious concerns about the protection of consumers' rights to access, verify, and dispute personal information held by TransUnion.

82. The statutory right of consumers to obtain their complete consumer file, a right intended to ensure transparency and accuracy in credit reporting, is hindered by TransUnion's operational choices, indicating willful non-compliance with the FCRA's provisions.

83. The statutory right of consumers to obtain their complete consumer file, a right intended to ensure transparency and accuracy in credit reporting, is hindered by TransUnion's operational choices, indicating negligent non-compliance with the FCRA's provisions.

84. TransUnion's repeated mischaracterization of Plaintiffs "file" requests and TransUnion's subsequent failure to provide to Plaintiff the requested consumer "file" have significant implications.

85. TransUnion's herein-alleged conduct deprives Plaintiff of his ability to review and dispute potentially inaccurate or incomplete information in his file, and it also conceals information that may be disseminated to third parties, affecting Plaintiffs creditworthiness, employment prospects, insurance premiums, and much more.

86. In light of the detailed recounting of TransUnion's responses to Plaintiffs legitimate requests for his complete consumer "file[,]" it is evident that there is a systemic failure or outright refusal by TransUnion to adhere to the obligations set forth by the FCRA.

87. Through attempts to secure his full consumer "file," Plaintiff has encountered obstacles that underscore a broader issue within TransUnion's operational framework, a disregard for statutory mandates designed to protect consumers.

88. TransUnion's repeated failure to comply with its clear legal requirements under the FCRA illuminates the need for judicial intervention to rectify these ongoing violations and to enforce the provisions of the FCRA, ensuring that consumer rights, such as Plaintiffs are not merely theoretical, but are actively enforced and protected.

**FIRST CLAIM OF RELIEF**
**(Defendant Trans Union, LLC)**
**15 U.S.C. § 1681g(a)**

89. Plaintiff re-alleges and reasserts all of the allegations contained in paragraph 1-88.

90. TransUnion violated 15 U.S.C. § 168lg(a) by failing to furnish to Plaintiff a complete copy of his consumer file in response to Plaintiffs requests for his consumer file.

91. TransUnion's refusal to provide Plaintiff a copy of his consumer file disregards its explicit statutory requirements under 15 U.S.C. § 1681g(a), but also inhibits Plaintiffs ability to ensure the accuracy of his financial and personal information, a cornerstone of consumer protection under the FCRA.

92. In direct violation of the FCRA specifically under the provisions of 15 U.S.C. § 1681g(a), TransUnion has systematically failed to fulfill its legal obligation to provide Plaintiff with his comprehensive consumer "file," despite repeated requests.

93. TransUnion's persistent refusal to comply with the FCRA, namely 15 U.S.C. §1681g(a), establishes TransUnion's conduct constituted willful noncompliance of the FCRA, rendering TransUnion liable to Plaintiff under 15 U.S.C. §1681n.

94. TransUnion's willful disregard for the FCRA has materially harmed Plaintiff.

95. Plaintiff asserts that TransUnion also negligently violated 15 U.S.C. § 1681 g(a) by its failure to furnish a complete consumer file in response to Plaintiffs requests.

96. TransUnion's neglect disregards its statutory duties under the FCRA, but also significantly impairs the Plaintiffs capacity to verify and ensure the accuracy of his financial and personal data—a vital aspect of consumer rights under the FCRA.

97. In a pattern of negligent non-compliance with the FCRA, namely 15 U.S.C. § 1681 g(a), TransUnion has consistently neglected its statutory duty to provide the Plaintiff with his complete copy of his consumer file despite his multiple requests.

98. TransUnion's repeated conduct not only ignores the specific stipulations of the FCRA, but also constitutes negligent non-compliance, making it liable to Plaintiff under 15 U.S.C. §1681o.

99. TransUnion's negligent failure to comply with 15 U.S.C. § 1681 g(a) has caused significant harm to the Plaintiff, thereby rendering it liable to Plaintiff under the FCRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands entry of judgement against the TransUnion as follows:

(a) Actual damages in an amount to be determined according to proof at trial;

(b) Statutory damages in an amount not less than $100 and not more than $1,000;

(c) For costs of this action as determined by the court;

(d) For such amount of punitive damages as the court may allow;

(e) For such other and proper relief as the court deems just and proper.

Respectfully submitted this second day of August, two thousand twenty-four

Brandon Rawls "Authorized Representative"

BRANDON RAWLS
PO Box 675622
Marietta, georgia near 30006
cfo-igb@brandonlavellrawls.com
(470) 641-5542
Plaintiff, *in propria persona.*

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served the Plaintiff or Plaintiff's Attorney in the foregoing matter with a copy of this pleading by depositing it in the United States Mail in a properly addressed envelope with adequate postage thereon.

This the, 2nd day of August, 2024